## Case No. 12,557.

### In re SCRAFFORD.

[14 N. B. R. 184; [1] 3 Cent. Law J. 252.]

District Court, D. Kansas. April, 1876.[2]

BANKRUPTCY—OPPOSITION TO ADJUDICATION—ATTACHING CREDITOR—PETITION—PROPORTION OF CREDITORS.

1. An attaching creditor may intervene, and oppose an adjudication of bankruptcy.

[Cited in Re Jonas, Case No. 7,442.]

2. A creditor who has issued an attachment within four months before the commencement of the proceedings in bankruptcy is to be reck-

[1] [Reprinted from 14 N. B. R. 184, by permission.]

[2] [Reversed in Case No. 12,556.]

oned in computing the proportion of creditors who must unite in an involuntary petition.

[Disapproved in Re Jewett, Case No. 7,305; Cited in Re Broich, Id. 1,921.]

In bankruptcy.

Judson & Motter, for petitioning creditor.

A. Well, J. E. Taylor, and John Doniphan, in opposition.

FOSTER, District Judge. Isaac T. Hosea filed his petition in bankruptcy against C. G. Scrafford. On the return day of the order to show cause, the respondent being absent from the state, his attorney appeared for him and filed a denial in writing that the petitioning creditors constituted one-fourth in number of the creditors, and whose debts aggregate one-third in amount of the debts provable under the bankrupt act, and also filed a list of creditors, and the amounts due each; which denial and list were sworn to by the attorney of the respondent. The petitioning creditor moved to strike out the said denial and list of creditors, because the same are not verified by the oath of the respondent. Pending said motion, certain other creditors of the respondent, who hold attachments on the property of respondent, on proceedings pending in the state court, asked leave to intervene in opposition to said petition, and alleged that the requisite number and amount of creditors had not joined in the bankruptcy proceedings. These questions have been argued together, and, so far as this case is concerned, if either the debtor or the attaching creditors are in a position to contest the question as to the number and amount of creditors, it matters but little under which party the inquiry is made. There is no doubt but attaching creditors have such an interest in the proceedings that they may intervene and oppose the adjudication, and they may contest the question as to the number and amount of creditors, as well as any other material fact in the case. In re Boston, H. & E. R. Co. [Case No. 1,677]; In re Bergeron [Id. 1,342]; In re Mendelsohn [Id. 9,420]; In re Hatje [Id. 6,215]; In re Jack [Id. 7,119].

The law evidently intends that the court shall be satisfied that the proper quorum of creditors have united in the proceedings. Even the written admission of the respondent on this point is not conclusive, but the court must be satisfied it is made in good faith, and without collusion. Supposing the respondent made no appearance on the return day, or he should make out a list omitting certain creditors, in either case a collusive judgment might be obtained, as well as by the written admission of the debtor. The law provides, if the respondent shall deny that the necessary quorum of creditors have joined, he shall then be required to file a list of the creditors; "and the court shall ascertain, upon reasonable notice to the creditors, whether one-fourth in number and one-third in amount as aforesaid have petitioned. * * *" This provision of the law brings before the court

other creditors having provable claims, and they may then be heard on the inquiry, although there is no charge of collusion or fraud. In this case, I think the application of the attaching creditors to intervene should be allowed, and that is sufficient to throw the duty on the court of making the investigation, and it is not necessary to determine whether an attorney may verify the denial and list of creditors, or whether any verification at all is necessary. The petitioning creditor asks to have excluded from the number such creditors as have secured a lien on the debtor's property by attachment proceedings. This is a very material point in this case, as it is probably decisive of the question under investigation. If the attaching creditors are excluded from the list, it would seem that the requisite number and amount have signed the petition. If they are not excluded then the reverse is true. The discussion that has been had of this question, and the investigation and thought I have given it, have convinced me that it is not as easily answered as at first blush might appear.

From the best comprehension I have been able to give the subject, it is my opinion the attaching creditors should not be excluded, in computing the number and amount. The law says: "shall be adjudged a bankrupt on the petition of one or more of his creditors, who shall constitute one-fourth thereof at least in number, and the aggregate of whose debts provable under this act amounts to at least one-third of the debts so provable." The question, then, primarily is simply this, What debts are provable under this act? It has been repeatedly decided that a secured creditor, or one holding a lien within the meaning of section 5075, is not a creditor holding a provable debt. The doctrine is concisely stated by Judge Blodgett, in Re Frost [Case No. 5,134]. He says: "It therefore seems evident to me that by the term 'Debts provable under this act,' congress meant debts unconditionally provable, without any release or other preliminary action, either by the court or assignee, being necessary." Section 5084 prohibits a creditor, who has received a preference, from proving his debt until he shall have surrendered the property, money, or benefit so received. Under the act of June, 1874, in case of actual fraud, he can then only prove a moiety of his debt. Section 5021 also prohibits the preferred creditor from proving his debt. There, then, are two classes of creditors whose debts are not provable, under this act, within the technical meaning of these words: the secured creditor and the preferred creditor. It is contended that a creditor who has obtained a lien by attachment proceedings, comes within the provision of section 5075; that he has a lien for securing the payment of his debt. By the provisions of section 5044, all attachments obtained on the debtor's property, within four months next preceding the commencement of the bankruptcy proceeding, are dissolved by the

transfer to the assignee. Now, it seems apparent that the mortgage, pledge, or lien mentioned in section 5075 refers to a mortgage, pledge, or lien, not only in esse, but one that continues to exist, notwithstanding the bankruptcy—a lien that is vested and absolute. It makes provision for ascertaining the value of the security, and applying it to the payment of the debt after the adjudication, and the election of an assignee. It provides that the holder of the security shall be admitted as a creditor only for the balance of the debt after deducting the value of the property, to be ascertained by agreement between the assignee and the creditor, or by a sale under the order of the court. Thus the holder of the security may be admitted as a creditor, or he may not be; depending on the value of the security, to be determined thereafter in the manner provided by the law.

It is urged that the same reason which would prevent a preferred creditor from proving his debt applies with equal force to an attaching creditor. Supposing that to be true, the answer is that the preferred creditor is excluded by the explicit provision of the law, while the attaching creditor is not. Again, supposing section 5084, or the prohibitory clause of section 5021 was not in existence, is there anything in the law to prevent a preferred creditor from proving his debt? If there is, why the necessity of a special provision for the exclusion of such creditors? It shows that the legislative mind did not understand that section 5075 prevented the preferred creditor proving his debt, and they therefore made provision in express terms for such cases. As to whether an attaching creditor has a provable debt, let us draw a deduction from the decided cases before referred to. In re Bergeron; In re Mendelsohn; In re Hatje. It is there held, as we hold here, that attaching creditors may intervene and oppose an adjudication in bankruptcy. Now, if an attaching creditor has not a provable debt, then the courts have in those cases established a precedent that a creditor who has not a provable debt, a secured creditor, if you please, may intervene and control the proceedings in bankruptcy, and defeat the adjudication. I think no case can be found where the court has permitted secured creditors to interfere with the proceedings for an adjudication. In Re Frost [supra], speaking of this matter, the court says: "Any other construction would make it practically impossible to put a very large proportion of debtors into bankruptcy, as it would leave unsecured creditors entirely at the mercy of those who had by diligence or otherwise obtained security." In re Green Pond R. Co. [Case No. 5,786]. In Re Hatje [supra], the claim of the attaching creditor was counted in the list without objection. The court says: "Treating the demands in favor of the attaching creditors and of H. P. Hatje as subsisting provable debts, it resulted that the requisite amount of debts was not represented by the petitioning cred-

itors." In that case it seems to have been material to determine whether or not the attaching creditors' claims should be included, and yet the petitioning creditors permitted it to be done without objection, so far as appears from the opinion of the court.

It is argued, and with much reason, that if attaching creditors are included, other creditors are very much at their mercy. The fact is, that under any circumstances, any one or more creditors less than one-fourth in number, and one-third in amount, is and are very much at the mercy of other creditors, whether they have or have not attached. It is true that a creditor who has seized sufficient property by attachment to secure his debt is less likely to join in bankruptcy proceedings than he otherwise would. On the other hand, he labors under some disadvantage. If he attaches, his labor and expense may be all for naught, by reason of subsequent bankruptcy proceedings; and if he does not attach, the debtor may squander his property, and the creditor lose his debt in toto. In most cases a creditor is not sufficiently conversant with the debtor's affairs to know the names and evidences of any considerable number of the creditors, and so it is often no easy task to get bankruptcy proceedings started, and then the moving creditors take the chances of getting the requisite number and amount of creditors to join, or of having the cost to pay on a dismissal of the petition. The hardship of the law, however, in particular cases, is not a reason for interpreting its meaning different from its apparent intent and purpose.

[NOTE. This cause was carried to the circuit court on petition of review, and the judgment of this court reversed. Case No. 12,556.]